## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ALBERT LOPEZ,**

**Plaintiff,**

**vs.**                                            **CIV 08-0820 WDS/RLP**

**JOHN G. GORDON, in his official and individual capacities,**
**and VALENCIA COUNTY,**

**Defendants.**

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment (Doc.No. 32). Plaintiff filed and Response (Doc. No. 33) and Defendants filed a Reply (Doc. No. 35). This is a civil rights case arising out of the pursuit and arrest of Plaintiff Albert Lopez by Defendant John G. Gordon on September 16, 2006 in Valencia County.

### STATEMENT OF MATERIAL UNDISPUTED FACTS

The Statement of Undisputed Facts sufficiently sets out the facts surrounding the incident and will be set out in full with cites to the record.

1. On September 16, 2006, Plaintiff Albert Lopez was driving a stolen Chevrolet Malibu when he led law enforcement officers on an initial pursuit in Valencia County. Deposition of Albert Lopez ("Lopez Depo.") at 9, 10.

2. The initial pursuit ended when the stolen Malibu driven by the Plaintiff flipped over into a drainage ditch. Lopez Depo. at 11-12.

3. The Plaintiff subsequently fled on foot and forced his way into a nearby home, threatened its occupants with a gun, and demanded keys to a vehicle. Lopez Depo. at 12-14. Deposition of John Gordon ("Gordon Depo.") at 18-19, 21-22, and Gordon Depo. Exhibit 1.

4. While at this home, the Plaintiff fired his gun into a wall in the home. Lopez Depo. at 13. Gordon Depo. Exhibit 1.

5. After being unable to start any vehicles with the keys given to him by the occupants of the home, and unsuccessfully attempting to reenter the home, the Plaintiff then fled to another nearby home where he again forced his way into the home. Lopez Depo. at 13. Gordon Depo. Exhibit 1.

6. At this second home, the Plaintiff threatened the occupants with his gun, struck one of the occupants, an 83 year old man, in the head with his gun, and took the keys to a Volvo Sport Utility Vehicle (SUV) which the Plaintiff used to speed away from the area. Lopez Depo. at 13-14, 17, 21, 22. Gordon Depo. at 21, and Gordon Depo. Exhibit 1.

7. The Plaintiff was then involved in a second police pursuit which ended when the Plaintiff flipped the Volvo SUV onto its side. Lopez Depo. at 13-14, 21-22. Gordon Depo. Exhibit 1.

8. The Plaintiff then went to a third residence and, implying he was armed with a gun, forced his way into the residence where he obtained keys to a white pickup which he then stole. Lopez Depo. at 14 -15, 21, 22, 23. Gordon Depo. at 22-23, 26, and Gordon Depo. Exhibit 1.

9. The Plaintiff then took law enforcement on a third high speed pursuit while attempting to evade capture. Lopez Depo. at 14-15, 23. Gordon Depo. at 29, 30, 32, 34-36, and Gordon Depo. Exhibit 1.

10. After getting the stolen truck stuck, the Plaintiff fled on foot, with Valencia County Sheriff's Sergeant John Gordon in pursuit in his patrol car. Lopez Depo. at 15, 23. Gordon Depo. at 35-36, 42, and Gordon Depo. Exhibit 1.

11. As the Plaintiff fled on foot, Gordon observed the Plaintiff running towards a residence. Gordon Depo. at 46-49, and Gordon Depo. Exhibit 1.

12. Fearing for the safety of the occupants of the residence based upon the Plaintiff's prior

violent acts, Gordon attempted to drive his patrol car around the Plaintiff and into a position between the Plaintiff and the doors to the residence towards which the Plaintiff was running. Gordon Depo. at 49, 51-52, and Gordon Depo. Exhibit 1.

13. As Gordon's patrol car was cresting a berm behind the Plaintiff, the Plaintiff suddenly and unexpectedly turned into the path of Gordon's car. Gordon Depo. at 51, and Gordon Depo. Exhibit 1.

14. When the Plaintiff made this unexpected turn, he was no more than 15 to 20 feet from Gordon's car. Lopez Depo. at 27.

15. Despite his attempt to stop by applying his brakes, Gordon was unable to stop his car in the soft sand and it struck the Plaintiff. Lopez Depo. at 27. Gordon Depo. at 48, 51, 58, and Gordon Depo. Exhibit 1.

16. Gordon did not intentionally use his patrol car to strike the Plaintiff. Gordon Depo. at 49, 51-52, and Gordon Depo. Exhibit 1.

17. If the Plaintiff had kept running and had not suddenly and unexpectedly turned into the path of Gordon's car, the Plaintiff would not have been struck by the car. Gordon Depo. at 54-55.

18. After the collision, Gordon exited his patrol car, believing that the Plaintiff was still armed with a gun. Gordon Depo. at 61-62, and Gordon Depo. Exhibit 1.

19. Fearing the Plaintiff might still be armed and concerned that the underside of the patrol car might burn the Plaintiff, Gordon pulled the Plaintiff from under the patrol car, handcuffed him and pat-searched him for weapons. Gordon Depo. at 61-62, and Gordon Depo. Exhibit 1.

20. The Plaintiff admits that his arrest by Defendant Gordon was proper. Lopez Depo. at 71.

### PLAINTIFF'S RESPONSE TO THE MATERIAL FACTS

In his Response brief Plaintiff disputes few of the above cited material facts. He disputes

paragraph 10 to the extent it describes Gordon's vehicle as a patrol car rather than an SUV. The fact that the police vehicle was an SUV rather than a sedan is not relevant to any issue in the case.

Plaintiff has several objections to paragraph 12. First, he disputes Defendants' assertion that Gordon was able to positively identify Plaintiff as the same individual who had committed the "prior violent acts." In fact, paragraph 12 does not state that Gordon had positively identified Plaintiff, though that could be implied from its language.

More importantly, the testimony of both Plaintiff and Defendant Gordon cited in the Statement of Undisputed Facts makes it clear that Plaintiff was the individual who committed the "prior violent acts" and that Gordon had a great deal of information upon which to base his belief that Plaintiff was the individual involved. Specifically, the individual who committed the prior violent acts was reported to have fled the scene of his last auto theft in a white or light colored pickup truck equipped with KC brand off-road lights. Gordon spotted such a truck being operated at high speed in the immediate vicinity of the auto theft, and the truck fled from him. Gordon had every reason to suspect that the person who had committed the earlier violent acts was driving the truck, and this turned out to be the case. The sufficiency of knowledge on the part of Gordon when he began his pursuit of Plaintiff is not a disputed issue for purposes of this summary judgment.

Plaintiff also objects to the portion of paragraph 12 which states that Gordon attempted to drive his vehicle around Plaintiff and put it in a position between Plaintiff and a nearby residence. Plaintiff relies on his own belief that Gordon intentionally drove into him (See Plaintiff's affidavit, Exhibit B to the Response) and a diagram which Plaintiff interprets as proving the Gordon drove in a straight line at Plaintiff. The Court will address Plaintiff's affidavit in more detail below, but it is clear that Plaintiff's belief as to Gordon's intent is not sufficient evidence to rebut Gordon's testimony. As to the diagram, Defendants' Reply attaches the affidavit of Deputy Sheriff Espinoza.

Espinoza prepared the diagram, and stated that the diagram was intended as a general reference and for measurements from certain reference points. While Plaintiff asserts that Line "J to D" on the diagram represents the path of Gordon's vehicle, Espinoza states that that line was merely a measurement from a point ("J") where T.R. 26 crossed the irrigation ditch to the rear, driver's side axle of the SUV (Point "D"). Deputy Espinoza specifically states that he had no knowledge of the path of travel of the patrol vehicle and his diagram does not purport to represent that path. Plaintiff's interpretation of the diagram is insufficient to create an issue of fact given the Espinoza affidavit. Thus, these objections to paragraph 12 are also without merit.

Lastly, Plaintiff complains that Gordon had no reason to be concerned for the safety of the potential occupants of the residence because he was not familiar with the residence, had no knowledge if was occupied, and did not see anybody outside who may be in danger. This argument is without merit. Gordon justifiably believed that the individual he was chasing had broken into several other homes during his adventure and had terrorized the inhabitants. Since Gordon did not know whether anybody was in the house, located 20 feet from where Plaintiff was struck, it was reasonable for him to act to protect the safety of any potential inhabitants, given the Plaintiff's earlier actions.

Plaintiff also disputes the facts in paragraphs 13-17, all of which concern the main issue of whether Defendant Gordon intentionally struck Plaintiff with his vehicle as Plaintiff was giving up. There are two sources for the evidence relied upon by Plaintiff to dispute paragraphs 13-17, Plaintiff's deposition and an affidavit submitted with his brief in opposition to Defendant's motion for summary judgment. At Plaintiff's deposition he stated in response to a direct question that he didn't remember if Gordon applied his brakes before hitting him, but he didn't think he did. In his affidavit, made on October 22, 2009, after the filing of this motion for summary judgment, Plaintiff

strongly asserts that Gordon never reduced his speed and never applied his brakes. He also states that in his opinion Gordon had plenty of time and sufficient distance to stop the vehicle completely in order to avoid striking him (See paragraph 6 of Exhibit B to Plaintiff's Response). The testimony contained in Plaintiff's affidavit differs markedly from his deposition testimony.

An affidavit may not be automatically disregarded because it conflicts with the affiant's prior sworn statements. *Franks v. Nimmo*, 796 F.2d 1230, 1237-38 (10th Cir. 1986). Courts may disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue. See, e.g., *Foster v. Arcata Associates, Inc.*, 772 F.2d 1453, 1462 (9th Cir. 1985), cert. denied, 475 U.S. 1048, 106 S. Ct. 1267, 89 L. Ed. 2d 576 (1986); *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984). The basic premise for these decisions is that the utility of the summary judgment procedure would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony. *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1364 (8th Cir. 1983).

In considering whether a sham fact issue has been created, Courts should consider whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain. See *Camfield*, 719 F.2d at 1364-65. In this case, Plaintiff's earlier testimony took place at a deposition during which he was questioned by defense counsel and subject to examination by his own attorney. Plaintiff's counsel made no attempt at that time to clarify Plaintiff's testimony that he did not know whether Gordon applied the brakes but didn't think he did. This situation does not present a question of newly discovered evidence, as Plaintiff's testimony is based only on what he remembered about being struck by Defendant's vehicle. Nor does the earlier

6

testimony present a situation in which there was confusion which the affidavit seeks to clarify.

To the contrary, it appears to the Court that the affidavit was prepared by Plaintiff's counsel in a specific effort to create sham factual issues sufficient to defeat Defendants' motion for summary judgment.  It is just such an undermining of the summary judgment process that the above noted cases caution against.  Accordingly, the Court finds that Plaintiff's affidavit fails to create a genuine factual dispute regarding the alleged intentional nature of Defendant Gordon's actions, and should be disregarded in considering the merits of Defendants' motion for summary judgment.

Once the affidavit and the opinions of the Plaintiff are disregarded, Defendants' Statement of Undisputed Facts is essentially unchallenged by competing material evidence.

## ANALYSIS

As a general rule, summary judgment should be granted where the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Bewley v. City of Duncan*, 1998 WL 314382 *3-4 (10th Cir. 1998) (citing Fed.R.Civ.P. 56(c)).  A genuine issue of material fact exists if the parties have presented sufficient evidence from which a trier of fact could resolve the issue either way.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  If the non-movant fails to provide sufficient evidence on an essential element of his prima facie case, however, all issues concerning all other elements of the claim become immaterial.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Accordingly, although evidence is viewed and inferences drawn "… in a light most favorable to the party opposing summary judgment ... that party must identify sufficient evidence which would require submission of the case to a jury." *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1402 (10th Cir.1997). Plaintiff argues that his Fourth and Fourteenth Amendment rights were violated by Defendant

Gordon. The Court will analyze each of these claims.

## Plaintiff's Fourth Amendment Claims

Plaintiff argues that his Fourth Amendment rights were violated when Gordon used excessive force in making an arrest that Plaintiff concedes was based upon probable cause. Plaintiff alleges that Gordon used excess force by striking him with the SUV after Plaintiff had surrendered to Gordon. A Fourth Amendment seizure occurs "when there is a government termination of freedom of movement through means intentionally applied. *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989 ). Liability arises under the Fourth Amendment when the amount of force used in making a seizure is unreasonable. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The "seizure" in this instance would be the striking of Plaintiff with the vehicle. Accordingly, in order for Plaintiff to prevail, a fact finder would have to find that Gordon intentionally struck Plaintiff with his vehicle in order to effectuate the arrest, and that the action of striking Plaintiff was an unreasonable use of force.

Defendant Gordon asserts that he accidentally struck Plaintiff while attempting to pass Plaintiff in order to block his access to a residence. Defendant testified that he had approximately eighteen inches of clearance between his vehicle and Plaintiff, but that Plaintiff stopped short and turned into the path of his vehicle while trying to surrender. Defendant testified that he applied the brakes but was unable to stop before striking Plaintiff. Where an officer accidently strikes a fleeing suspect with his vehicle, there has been no Fourth Amendment use of force or seizure.

The question before the Court on this issue is whether Plaintiff's deposition testimony raises a genuine issue of fact as to whether Gordon intentionally struck Plaintiff. Plaintiff testified that the pickup he had stolen ran out of gas. (Plaintiff's Opposition Brief, Exhibit A, Tr. p. 23) He jumped out of the vehicle and ran up the ditch bank as fast as he could. Tr. 24. Plaintiff denied seeing a

residence in his path, Tr. 24, but there is no question of fact that the residence was there and that Plaintiff was struck less than twenty feet from the residence. Plaintiff testified that he was running as fast as he could, Tr. 25, could hear the police car behind him, Tr. 24-25, but did not look back over his shoulder. Tr. 26. Plaintiff stopped, turned directly around, and raised his hands. Tr. 25-26. He saw the SUV approximately 15-20 feet away from him. Tr. 27. Plaintiff and the SUV were both in soft sand. Tr. 27. Plaintiff did not remember whether he saw the SUV brake, but said "I don't think he did." Tr. 28. Plaintiff did not hear Gordon say anything at the scene regarding how the collision occurred. Tr. 32. Plaintiff did not present any expert testimony in the nature of accident reconstruction, i.e., an analysis of how the accident occurred or stopping distances for an SUV traveling at a certain speed in soft sand.

The Court concludes that Plaintiff's testimony is insufficient to raise a genuine issue of material fact as to whether Gordon intentionally struck him with the vehicle. Plaintiff's lack of knowledge or, at best, uncertainty about what Gordon did, would not be a sufficient basis for a jury to conclude that the collision resulted from an intentional act on Gordon's part.

## Plaintiff's Fourteenth Amendment Claims

In order to establish a Fourteenth Amendment substantive due process violation, Plaintiff must prove an intent to harm, or must show that Gordon had sufficient time to actually deliberate and exhibited conscience-shocking deliberate indifference towards Plaintiff. *Green v. Post*, 574 F.3d 1294 (10th Cir. 2009). As noted above, the Court has concluded that Plaintiff has not carried his burden of raising a genuine issue of fact as to whether Gordon intentionally struck him with the SUV. For purposes of analyzing this type of Fourteenth Amendment substantive due process claim, the "deliberate indifference" standard is one that lies in the middle range of the culpability spectrum, where the conduct is more than negligent but less than intentional, and where there may be some

9

conduct that is egregious enough to state a substantive due process claim. *Radecki v. Barela*, 146 F.3d 1227, 1231 (10th Cir. 1998).

Courts analyze the level of culpability by "examining the circumstances that surround the conduct at issue and the government interest at stake." *Id.* In a due process challenge such as this, the threshold question is whether the behavior of the governmental officer demonstrates a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking. *Livsey v. Salt Lake County*, 275 F.3d 952, 957-58 (10th Cir. 2001). In a case such as this the Court must also consider the amount of time available to an officer in which to make a decision as to a course of action. "Liability for deliberate indifference . . . rests upon the luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Sacramento v. Lewis,* 523 U.S. 833, 853; 118 S. Ct. 1708; 140 L.Ed. 2d 1043 (1998).

Under the undisputed facts of this case, Defendant Gordon validly suspected that Plaintiff had committed a series of violent crimes, to include invading several homes with a firearm and threatening the inhabitants in order to steal their vehicles, eluding police, and wrecking vehicles during the police pursuit. Plaintiff knew Gordon was chasing him and even when he abandoned his last vehicle he continued to flee on foot. As Plaintiff made his last attempt to flee, Gordon observed that he was heading directly towards a residence. An objective observer, knowing or validly suspecting what Gordon knew at that time, would have concluded that Plaintiff was likely armed, very dangerous, and that his proximity to the residence (which at the end of the encounter was only 20 feet away) created a clear danger that he would again attempt to force his way into the residence and again terrorize the occupants.

Furthermore, Gordon did not have the luxury of time to make an unhurried judgment. This

was an active chase which left Defendant Gordon with seconds for deliberation. His decision to try to drive past Plaintiff and put his vehicle between Plaintiff and the residence was eminently reasonable. While Gordon's decision led him to drive perilously close to Plaintiff, and resulted in Plaintiff being struck by the vehicle, the decision can in no manner be said to reflect deliberate indifference towards Plaintiff. Nor does the decision shock the conscience of the Court.

The Court notes that Defendants included an excessive force analysis regarding Gordon's actions in pulling Plaintiff out from under his vehicle after he was struck. It is not clear to the Court whether Plaintiff was asserting such a claim, however the Court finds that the evidence in this case is insufficient to establish a prima facie case for liability. When Gordon got out of the SUV after the impact, Plaintiff was partially under the car and only one hand was visible. Gordon had been told that Plaintiff had brandished and used a weapon in the earlier stages of his crime spree. It was abundantly reasonable under the circumstances for Gordon to pull Plaintiff out from under the vehicle to render the scene safe, i.e., either to search and disarm Plaintiff or to simply make sure that Plaintiff no longer had the firearm in his possession.

Based on the undisputed facts noted above, Plaintiff's claims of municipal liability are without any support in the record and will also be dismissed.

Finally, the Court notes that Defendants assert a defense of qualified immunity. Defendants' argument is twofold: (1) No constitutional violation has been demonstrated by the Plaintiff and (2) the case law established at the time actually supports Gordon's actions. First, these two reasons are different ways of saying the same thing, that Gordon did nothing wrong. However, qualified immunity protects an official who has actually violated a constitutional right as long as that right was not "clearly established" at the time of the violation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants have not provided the Court with an analysis of whether the constitutional rights

11

involved in this particular case were clearly established or not. Furthermore, the Court is dismissing this case under the summary judgment standard, finding as a matter of law that there was no constitutional violation. Accordingly, the Court will not address the issue of qualified immunity.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc.No. 32) is granted as set out above as to all Constitutional claims. The remaining state claims will be remanded to state court for disposition.

_____
W. Daniel Schneider
UNITED STATES MAGISTRATE JUDGE